Turney, J.,
delivered the opinion of the Court.
On the 26th of October, 1847, 'William Clark executed his note to Charles Lofland for the sum of twelve hundred and fifty dollars, ($1250), payable twelve months after date.
The Farmers and Merchants Bank was indebted to John S. Staunton in a sum over twenty-one thousand dollars, ($21,000). The claim was placed in the hands of attorneys for collection and was reduced to two thousand dollars, ($2,000), for which judgment was obtained against Charles Lofland: — a part of which was •collected. This judgment was rendered on the 21st -of November, 1850; about which time Lofland placed in the hands of Staunton’s attorney the above-mentioned note of Clark, as a collateral security for the payment of the judgment.
Lofland died in the early part of January, 1851. On the 23rd of September, 1851, the attorney delivered to the agent of Mrs. S. M. Staunton the said note — Staunton being dead and Mrs. Staunton, his executrix.
On the 17th of August, 1847, Clark paid Lofland two hundred dollars, ($200), and took' his due bill. On the 5th of October, 1848, he paid ' his check of two hundred and fifty dollars, ($250). In the Spring of 1850, he paid as endorser for him, five hundred *671 dollars, ($500). On the 15th of July, 1852, he paid to Park two due bills of Lofland, amounting to four hundred and five dollars, $405).
Soon after his death, his administrator suggested the insolvency of the estate of Lofland, who, it appeared, had been insolvent for a year or two before his death.
On the 16th of March, 1858, Mrs. Staunton obtained a judgment against Clark for the principal and interest of the note, amounting to two thousand and twenty-five dollars, ($2,025). Execution issued the 3rd of October, 1859, and was levied on the property of Clark, who filed this bill to enjoin the sale and have the benefit of the payments made to Lofland, and also those made after his death.
The bill must be dismissed. The' record shows that the three first credits, claimed to have been an indebtedness from Lofland to Clark, were in existence before the commencement of the suit at Law, — and that they might have been successfully pleaded without embarrassment. No reason is given why the defense was not made at law; it, in fact, existed then, if ever at all; and the Law Court had jurisdiction. It was the duty and the right of the party to have made it; and having failed to do so in a Court of competent jurisdiction, he can not now be allowed to resort to a Court of Chancery to cure the result of his own laohes.
The four hundred and five dollars ($405), paid in the purchase of the two due bills on the 15th of July, 1852, was expended eighteen months after the- *672 death of Lolland • and almost that long, as appears from the bill, after the suggestion of the insolvency of his estate; and when there was mo right or authority existing in Clark to pay off the notes or liabilities of Lolland, and claim such payment as a credit upon his own indebtedness. The estate was in the custody of the law and under the control of the Court having jurisdiction of it as an insolvent estate; and the purchase or payment by Clark was in his own wrong and at his own risk. If, at the time of the taking in of these due bills, the estate of Lolland had been entitled to the proceeds of the Clark note, only a pro rata share of such proceeds could have been applied to . them.
Reverse the decree.